GRIMES, Chief Justice.
Under the provisions of article V, section 9, of the Florida Constitution, the Florida Supreme Court is responsible for determining the need for an increase or decrease in the number of judges required to consider and dispose of cases filed before the respective courts. To this end, we have analyzed case filings and evaluated the growth in the workload of the State Courts System over the past several years.
As a result of this review, we certify the need for thirteen circuit court judges, two county court judges, and no additional appellate court judges. A comparison of the requests for new judges filed by the respective trial courts and the new judges certified as needed for fiscal year 1995-96 follows:
*94 [[Image here]]
The criteria for certification of the need for additional judges in the district courts of appeal are set forth in rule 2.035(b)(2), Florida Rules of Judicial Administration. The Court did not receive any requests for additional judges from any of these courts, despite the fact that Florida’s intermediate appellate courts all exceed the established threshold of 250 appellate filings per judge.
The district courts of appeal have addressed workload pressures by improving internal operating procedures, using central legal research staff, relying on a full range of computerized applications, and assigning senior judges on a temporary basis. We are heartened by their efforts and further encourage these courts to develop alternative and creative means to efficiently and fairly hear the cases brought before them. One such means proposed for use in the First District Court of Appeal this year is the appellate pre-briefing conference program, involving mediation and case management. We recommend that the Florida Legislature fund this program as well as increase the funds for temporary assignment of senior judges, since both alternatives are less expensive than adding more appellate judge-ships. Based upon the lack of requests, we do not certify any additional judicial positions for the district courts of appeal.
The criteria for certification of the need for judges in the trial courts are set forth in rule 2.035(b)(1), Florida Rules of Judicial Administration. As with past certification orders, we have placed the greatest weight on statistical data reflecting the growth and composition of caseloads in the various circuits and counties. We have determined that the most consistent and reliable measure of workload at the trial court level is total case filings per judge.
In addition to those factors prescribed in rule 2.035, Florida Rules of Judicial Administration, other criteria we considered included the availability and manner of employment of supplemental hearing resources furnished by the counties (civil traffic infraction hearing officers, child support enforcement hearing officers, and general or special masters); the use of county and sen *95 ior judges on temporary assignment; reliance on mediation and arbitration to resolve cases; and special local circumstances that affect case handling.
We find it necessary to certify thirteen new circuit court judges for fiscal year 1995-96: one additional circuit court judge each for the Fifth, Sixth, Seventh, Tenth, Fourteenth, Seventeenth, Eighteenth, and Twentieth judicial circuits; two additional circuit court judges for the Eleventh Judicial Circuit; and three additional circuit court judges for the Ninth Judicial Circuit.
While the circuit courts experienced a relatively flat level of filings from 1991 through 1993, 1994 yielded increases in almost every category of ease. Criminal filings were up in 1994 for the first time since 1989, and the gradual increase in this category is forecast to continue in 1995. Juvenile filings increased sharply in 1994, and 1995 juvenile filings are expected to be 13.5% above the 1993 level. The most significant growth continues to be in domestic and repeat violence case filings. This category of eases has increased 401% since 1986. A total of 57,311 domestic and repeat violence cases were filed in 1994. Family law cases have grown by an average of 7.7% per year over the same period. In only the general civil and probate categories are case filings projected to remain at or near the same level.
In addition to the growth in the number of filings in the criminal, juvenile, and domestic violence categories, the cases in these categories are more labor intensive than in previous years. Florida has one of the highest rates of violent crime in the country. As a result, the cases being filed in Florida’s criminal courts are increasingly complex and involve more serious offenses. Judges report expanding motion practice and longer trials. At the same time, the trial capacity of the criminal courts has remained relatively constant. Only 3.1% of the dispositions in Florida’s circuit criminal courts are by jury trial.
In the past, when a court had or was projected to have 1,865 circuit filings per judge, this Court determined there was a presumptive need for additional judicial resources. Courts at this level of filings were deemed to be working above capacity. Indeed, changes in the law in recent years which necessitated more hearings for various types of cases, mandated priority handling for certain matters, and required judges to render written findings of fact and conclusions of law have made the cases more involved and labor intensive than when the 1,865 filings per judge threshold was adopted in 1986. Thus, we have been compelled to give careful consideration to the necessity for additional judgeships not only for courts near or above the threshold, but also for courts that are marginally below the standard as well. The certification of need for additional judges for the Sixth, Eleventh, Seventeenth, and Eighteenth judicial circuits, which fall in the latter category, were based on examination of the mix of cases, pending case inventories, dispositional data, geographical constraints, and related factors unique to each requesting court.
The Court gave the request of the Eleventh Judicial Circuit a particularly close review because of the number of judges requested and the fact that the 1995 forecast of case filings for that circuit is somewhat below the threshold. Much of our attention focused on the criminal divisions of that circuit which were said to be in need of substantial assistance. Both the Attorney General and the State Attorney for the Eleventh Judicial Circuit have asserted that the shortage of circuit judges to handle criminal trials has caused a backlog in the prosecution of major criminal cases.
Because several views on the extent of need for additional judges had been expressed to the Court, the Chief Justice and the State Courts Administrator met with the judicial leadership and staff of the Eleventh Judicial Circuit. Supplemental data was reviewed, including information on the crime problem in Dade County; the workload, organization, and operating procedures of the criminal division; the extent and impact of foreign language interpreters; the allocation of judges among other divisions of the circuit court; and resource and other issues related to the impact of law enforcement, prosecution, and criminal defense functions on the court. While we were informed there was a *96 serious shortage of judges, we were also advised that it was likely that the backlog could be significantly reduced if temporary judicial help could be made available. As a consequence of this discussion, we have already authorized additional senior judge days for specific assignment to the criminal division in the Eleventh Judicial Circuit as a component for the criminal court strike force for the period of March 1, 1995, through June 30, 1995.
We have concluded to certify the need for two permanent judgeships at this time. However, we strongly recommend that the Legislature substantially increase our allotment of senior judge days in order that we can continue this strike force concept in the next fiscal year. The State Courts System will file a supplemental budget request which will allow the assignment of the equivalent of between two and three additional full-time senior judges to the Dade County criminal division for up to a year.
The Court views the employment of the criminal case strike force concept as experimental. However, we believe it to be a less expensive response to what may only be a temporary problem. The supplemental budget request for strike force resources, which will include senior judges and necessary support staff, would also permit its extension to one or two other circuits that may have particular problems with criminal dockets.
Through the employment of two new judges and the additional senior judges, together with the reassignment of judges from other divisions or the county court as may be deemed advisable to maximize the court’s response to its needs in the criminal area, we are hopeful that much of the current workload pressure will be eliminated. Needless to say, we will continue to analyze the needs of the Eleventh Judicial Circuit in the 1996 certification process.
As in circuit court, the 1994 caseloads in the county courts increased, reversing a four-year downward trend. This is largely attributable to modest growth in criminal and civil filings. Criminal traffic filings were up slightly, as were DUI filings.
In evaluating the need for additional county court judges, we relied principally on case filings data that were adjusted to include only criminal, civil, DUI, and other criminal traffic cases. As in the past, worthless check cases and civil traffic infractions were weighted less heavily because of their limited requirements for judicial time, the diversion of large numbers of worthless check cases in selected circuits, and the variability and volume of such cases reported from county to county. Similar to the application of the circuit court threshold, we have applied the same methodology to county courts. County courts with caseload forecasts near or exceeding 6,114 filings per judge are presumed to be operating at or above capacity. All of the counties for which a certification of need is made are projected to exceed the 6,114 threshold.
It is clear to this Court that adding judges alone will not ensure increased efficiency in the Florida State Courts System. This conclusion is supported by our evaluation of judicial workload in the twenty judicial circuits, the circumstances in the Eleventh Judicial Circuit, and the initial progress of our family court initiative. Judges cannot efficiently and effectively manage caseloads without the benefit of adequate, trained support staff. The availability of law clerks, case managers, and other support personnel, as well as automation and other resources, are essential to the ability of Florida’s courts to effectively address caseload pressures on a continuing basis. We urge the Florida Legislature to provide the Judicial Branch with the resources necessary to carry out its constitutional function.
Full funding of the requests certified in this opinion is absolutely essential if Florida’s courts are to fulfill their constitutional mandate to try cases in a fair, impartial, and timely manner. Moreover, the Florida Legislature is encouraged to authorize the judge-ships certified as necessary herein, effective September 1, 1995, in order that the new judges are available as soon as possible.
It is so ordered.
OVERTON, SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.